IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:23-cv-02132-KAS

EUGENE ROBERTSON,

    Plaintiff,

v.

TOKAR, Officer, #318556, Police Officer at Aurora Police Department,

    Defendant.

_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Defendant's **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)** [#18][1] (the "Motion"). Plaintiff Eugene Robertson, who proceeds as a pro se litigant,[2] filed a Response [#28] in opposition to the Motion [#18], and Defendant Officer Tokar filed a Reply [#30]. The Court has reviewed the briefs, the entire

---

[1] [#18] is an example of the convention the Court uses to identify the docket numbers assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order. Unless otherwise stated, the Court cites the page numbers as assigned by the Court's case management and electronic case filing system (CM/ECF), and not to any page numbering on the original documents.

[2] The Court must liberally construe the filings of a pro se litigant "so as to do justice." *See* Fed. R. Civ. P. 8(e); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Accordingly, the Court may not "supply additional factual allegations to round out [a pro se litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1174 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). Further, pro se litigants are subject to the same procedural rules that govern other litigants. *Nielsen v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

case file, and the applicable law.[3] For the reasons set forth below, the Motion [#18] is **DENIED**.

## I. Background[4]

Plaintiff is incarcerated with the Colorado Department of Corrections but was not incarcerated at the time of the events underlying this lawsuit. *Second Am. Compl.* [#14] at 4-5. Defendant, at the time of the incident, was a police officer with the Aurora Police Department. *Id.* at 2; *Motion* [#18] at 1. The claim arises from a single event during which Defendant's firearm was discharged while Defendant engaged with Plaintiff. *Second Am. Compl.* [#14] at 4-5.

On the night of October 17, 2022, Defendant and other officers of the Aurora Police Department responded to a call from dispatch regarding alleged shots fired in the Robinwood Condominiums complex in Aurora, Colorado. *Id.* at 4. Plaintiff claims that, at some point after the officers' arrival, he approached the officers, including Defendant, with his hands in the air, wearing no shirt, and carrying no weapons. *Id.* While approaching Defendant, Plaintiff asserts that he yelled, "Hey let me explain I'm not armed, or have any weapons." *Id.* As Plaintiff approached, Defendant began to walk toward Plaintiff. *Id.*

Plaintiff—referencing Defendant's body-worn camera ("camera") footage for support—alleges that Defendant's firearm was unholstered as he approached Plaintiff, and that Defendant raised his firearm in his left hand and fired one shot at him. *Id.* After the firearm discharged, Plaintiff claims he immediately fell to the ground while yelling,

---

[3] This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c), on consent of the parties. *See* [#31, #33, #34].

[4] In determining whether an operative complaint states a claim for relief, the Court views the allegations in a light most favorable to the plaintiff, as the non-moving party. *Abdi v. Wray*, 942 F.3d 1019, 1025 (10th Cir. 2019).

"please don[']t kill me I'm not a threat." *Id.* As the other officers approached, Plaintiff alleges another officer asked Defendant if he had fired at Plaintiff and that Defendant responded, "yes." *Id.* at 4.

Plaintiff asserts only one claim for "excessive force reckless and callous indifference" under the Eighth and Fourteenth Amendments. *Id.* at 4-5, 7. In liberally construing Plaintiff's filings, the Court analyzes the merits of Plaintiff's claim as an excessive force claim asserted under the Fourth, Eighth, and Fourteenth Amendments, as further explained below. *See* Fed. R. Civ. P. 8(e); *Haines*, 404 U.S. 521; *Hall*, 935 F.2d 1110. In the present Motion [#18], Defendant seeks dismissal of Plaintiff's claim. *Motion* [#18] at 2-3, 10.

Plaintiff seeks declaratory relief, $150,000 in compensatory damages, $100,000 in punitive damages, and his costs against Defendant in his individual capacity. *Second Am. Compl.* [#14] at 7, 9.

## II. Standard of Review

When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court tests "the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994); Fed R. Civ. P. 12(b)(6). For a pleading to survive a motion to dismiss, the plaintiff must have alleged facts which, when taken as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)). In addition, the factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal

conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S at 678.

### III.  Analysis

**A.    Materials Outside the Operative Complaint**

In his Second Amended Complaint [#14], Plaintiff references camera footage to support his claim. *Second Am Compl.* [#14] at 4. In the Motion [#18], Defendant supplies and heavily references the camera footage in attempting to defeat Plaintiff's claim. *Motion* [#18] at 4-5, 7-9. In Plaintiff's Response, he references and attaches an Aurora Police Department's Internal Investigations Bureau Memorandum regarding Internal Affairs investigation IAI-2022-0018 [#29]. *Response* [#28] at 4. This document directly relates to the at-issue incident. *Id.*

Typically, when considering a motion to dismiss, a court must disregard facts supported by documents other than the complaint unless the court converts the motion to dismiss into a motion for summary judgment. *See Jackson v. Integra Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991). However, a court may consider materials outside the complaint on a motion to dismiss in three instances. First, a court may consider outside materials pertinent to ruling on a Fed. R. Civ. P. 12(b)(1) motion attacking the basis for subject matter jurisdiction.[5] *Pringle v. United States*, 208 F.3d 1220, 1222 (10th Cir. 2000). Second, the Court may consider outside materials subject to judicial notice, including court documents and matters of public record. *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006). Third, the Court may consider materials referenced in the complaint if they are "(1) mentioned in the complaint, (2) central to the claims at issue,

---

[5] The first exception does not apply here because Defendant's Motion [#18] is asserted under Fed. R. Civ. P. 12(b)(6).

- 4 -

and (3) not challenged as inauthentic." *Ramirez v. Hotel Equities Grp., LLC*, No. 19-cv-294-WJM-KMT, 2019 WL 5964968, at *1 (D. Colo. Nov. 13, 2019) (cleaned up) (quoting *Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 521 (10th Cir. 2013)).

### 1. Internal Investigations Bureau Memorandum

Under the second exception, the Court may consider materials subject to judicial notice, including matters of public record. *Tal*, 453 F.3d at 1264 n.24; *Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1054 (D. Kan. 2021) ("[W]hile the Court may take judicial notice of matters in the public record such as the independent investigator's report . . . such notice is limited to the document's existence, not its accuracy."); *see also Lorusso v. Boulder Brands, Inc.*, Nos. 15-cv-00679-MSK-KMT, 15-cv-01043-MSK-KMT, 2017 WL 4334070, at *1 (D. Colo. Feb. 27, 2017) (noting a court's ability to judicially notice its own files and records, and facts that are a matter of public record; however, documents may not be used to prove the truth of the matters asserted).

The Court assumes without deciding that the occurrence of the Internal Affairs investigation IAI-2022-0018 is a matter in the public record. But the parties' briefing renders unclear whether the Aurora Police Department's Internal Investigations Bureau Memorandum—which is a letter about that investigation specifically addressed to Plaintiff—is a matter of public record as well. *See Response* [#28] at 4. However, even if the Court were to judicially notice Plaintiff's correspondence with the Internal Investigations Bureau, it would have no material effect on the outcome for two reasons.

First, documents subject to judicial notice may not be used to prove the truth of the matters asserted. *Tal*, 453 F.3d 1265 n.24. Plaintiff attaches the letter as proof that Defendant's assertion of the gun's accidental discharge lacks merit. *Response* [#28] at 2.

The Court may be allowed to take judicial notice of this letter's existence, but the Court cannot use it to prove the truth of either Plaintiff's or Defendant's assertions.

Second, consideration of the memorandum does not affect the outcome of this Order because a "violation of police regulations is insufficient to ground a § 1983 action for excessive force." *Tanberg v. Sholtis*, 401 F.3d 1151, 1163 (10th Cir. 2005); *see also Romero v. Bd. of Cnty. Comm'rs of Cnty. of Lake, State of Colo.*, 60 F.3d 702, 705 (10th Cir. 1995) (noting that violations of police procedure generally do not give rise to a § 1983 claim). Plaintiff's memorandum is immaterial because whether the discharge of Defendant's gun violated an Aurora Police Department directive does not make it more or less likely that the discharge implicated the Fourth Amendment. *See Tanberg*, 401 F.3d at 1163.

### 2. Body-Worn Camera Footage

Under the third exception, on a motion to dismiss a court may not consider camera footage that is referenced in a complaint and central to the claims at issue if its authenticity is disputed. *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

When a plaintiff does not incorporate by reference or attach to his complaint a document central to his claims, "a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *Larson v. Agos*, 449 F. App'x 725, 729 (10th Cir. 2011) (quoting *GFF Corp.*, 130 F.3d at 1384). The Court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). However, if a material is neither quoted nor referenced in the operative pleading, nor sufficiently alleged as authentic and

undisputed, the material may not be considered for a Rule 12(b)(6) analysis. *See N.E.L. v. Douglas County, Colorado*, 740 F. App'x 920, 933 (10th Cir. 2018); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

Here, Defendant submitted what he claims to be his camera footage as exhibits alongside his Motion [#18] under Rule 12(b)(6).[6] *Motion* [#18] at 5; *Conventionally Submitted Material* [#19]. Defendant maintains that the Court may appropriately consider the camera footage without converting the Motion [#18] to one for summary judgment because it has been incorporated by reference in the Second Amended Complaint [#14], and it is central to Plaintiff's claim. *See id.* In his Second Amended Complaint [#14], Plaintiff incorporated the camera by reference, "as seen on body cam," and the Court agrees that it is central to Plaintiff's claim that Defendant approached the unarmed Plaintiff with his firearm unholstered, raised it in his left hand, pointed it at Plaintiff, and fired one shot. *Second Am. Compl.* [#14] at 4. Plaintiff does not dispute Defendant's assertion that the camera footage has been incorporated by reference and is central to his claim. Instead, Plaintiff contends that the camera exhibits are "not original copies" because they are missing parts Plaintiff claims he saw when previously allowed to view the camera footage. *Response* [#28] at 2. Plaintiff also requests "all original, non-alter[ed] exhibits" because he claims to have reviewed the "first [camera] footage in discovery that shows the Defendant's left arm as he unholstered his firearm, pointed it at Plaintiff, and

---

[6] Defendant supplied two video exhibits. Exhibit A, denoted as COAROB000001, is an excerpt of Defendant's camera footage, allegedly containing the events underlying this lawsuit. *Conventionally Submitted Material* [#19]; *Motion* [#18] at 5. Exhibit B, denoted as COAROB000002, is the complete camera footage of Defendant which includes the Exhibit A excerpt. *Id.*

fired." *Id.* In addition, the Court notes that Defendant has not provided any evidence, such as an affidavit, demonstrating that the footage is authentic and unaltered.

The court in *Prissert v. EMCORE Corporation*, 894 F. Supp. 2d 1361, 1368-69 (D.N.M. Sept. 28, 2012), faced a similar issue where the defendants submitted copies of contracts and the plaintiffs claimed they were not the final executed versions upon which their complaint was based. There, the plaintiffs disputed the authenticity of the documents because they were not "clean" copies and because one of the documents suggested that further negotiations had not yet occurred. *Prissert*, 894 F. Supp. 2d at 1368. The court held that "because Plaintiffs dispute their authenticity, the Court is foreclosed from considering them in deciding Defendants' motion to dismiss." *Id.* at 1369. Like the plaintiff in *Prissert*, Plaintiff here contends the camera exhibits are "not original copies" because they are missing parts Plaintiff claims to have previously witnessed when he reviewed the footage. Thus, because Plaintiff disputes the authenticity of the camera footage, the Court may not consider it in its adjudication of the Motion [#18].

**B.     Merits of the Claim**

   **1.     Appropriate Constitutional Amendment**

Determining which amendment is appropriate for a § 1983 excessive force action "depend[s] on 'where the plaintiff finds himself in the criminal justice system' at the time of the challenged use of force." *McCowan v. Morales*, 945 F.3d 1276, 1282-83 (10th Cir. 2019) (quoting *Est. of Booker v. Gomez*, 745 F.3d 405, 418-19 (10th Cir. 2014)); *see also Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010) ("The choice of amendment matters. Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds himself in the

criminal justice system[.]"). The Eighth Amendment applies to "prisoners already convicted of a crime who claim that their *punishments* involved excessive force[.]" *Porro*, 624 F.3d at 1325-26 (emphasis in original). Where neither the Fourth nor Eighth Amendment applies, courts "turn to the due process clauses of the Fifth or Fourteenth Amendment and their protection against arbitrary government action by federal or state authorities," respectively. *Porro*, 624 F.3d at 1326. Finally, as applicable here, "[a]ny force used 'leading up to and including arrest' may be actionable under the Fourth Amendment's prohibition against unreasonable seizures." *Est. of Booker*, 745 F.3d at 419 (quoting *Porro*, 624 F.3d at 1325-26).

### a.  Eighth Amendment

The Eighth Amendment governs post-conviction constitutional violations asserted by inmates during the course of their incarceration. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (stating that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners . . . where the deliberate use of force is challenged as excessive and unjustified"). Here, Plaintiff alleges that he was located at the Robinwood Condominiums complex in Aurora at the time of the alleged conduct. *Second Am. Compl.* [#14] at 4. The Eighth Amendment is not applicable here because Plaintiff was not incarcerated at the time of the alleged conduct. *Whitley*, 475 U.S. at 327.

### b.  Fourteenth Amendment

"[T]he Fourteenth Amendment governs any claim of excessive force brought by a 'pretrial detainee'—one who has had a 'judicial determination of probable cause as a

prerequisite to [the] extended restraint of [his] liberty following arrest.'" *Est. of Booker*, 745 F.3d at 419 (quoting *Bell v. Wolfish*, 441 U.S. 520, 536 (1979) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975))). Further, as applicable here, the Supreme Court has held:

> *[A]ll* claims that law enforcement officers have used excessive force— deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (emphasis in original).

Plaintiff argues that Defendant's actions violated his right to due process under the Fourteenth Amendment. However, Plaintiff was not a pretrial detainee at the time of the alleged events. *Bell*, 441 U.S. at 536; *Gerstein*, 420 U.S. at 114); *see also Graham*, 490 U.S. at 395 n.10. Thus, the appropriate amendment under which to analyze Plaintiff's excessive force claim is the Fourth Amendment, not the Fourteenth Amendment.

        **c.**     **Fourth Amendment**

In an excessive force claim, the Fourth Amendment continues to apply up to the moment of a judicial determination as to "whether there was probable cause to charge [an arrestee] with a crime." *McCowan*, 945 F.3d at 1283. In this case, Plaintiff alleges the force occurred prior to his arrest, thereby implicating the Fourth Amendment. *Bond v. City of Tahlequah*, 981 F.3d 808, 815 (10th Cir. 2020) (explaining that "[w]here, as here, the alleged excessive force occurred prior to arrest, it is the Fourth Amendment that applies"), *rev'd on other grounds by City of Tahlequah v. Bond*, 595 U.S. 9 (2021). "To state a claim of excessive force under the Fourth Amendment, a plaintiff must show that a seizure

occurred and that the seizure was unreasonable." *Bella v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (internal quotations omitted).

### i.   Seizure

"'[W]ithout a seizure, there can be no [Fourth Amendment] claim for excessive use of force.'" *Farrell v. Montoya*, 878 F.3d 933, 937 (10th Cir. 2017) (citation omitted). Generally, to show that a "seizure" occurred, the plaintiff must allege either termination of movement by physical force or submission to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991).

Here, the alleged excessive force occurred when Defendant pulled out his handgun and fired at Plaintiff even though Plaintiff already had his hands in the air and told Defendant he had no weapons. *Second Am. Compl.* [#14] at 4. Defendant asserts that the handgun's discharge is insufficient to support a Fourth Amendment claim because the bullet did not strike Plaintiff. *Motion* [#18] at 9. However, physical force by way of actual contact is not the only method by which to effectuate a seizure under the Fourth Amendment. *See Hodari D.*, 499 U.S. at 626. A plaintiff may also establish that a seizure occurred by showing a termination of movement by "submission to the assertion of authority." *Id.* (emphasis omitted). Here, Defendant exercised a show of authority when he allegedly "fired a round at Plaintiff." *Second Am. Compl.* [#14] at 4. After Defendant's gun discharged, Plaintiff allegedly "immediately fell to the ground," terminating his movement. *Id.* Under Plaintiff's allegations, Defendant's show of authority plausibly amounts to an unlawful seizure under the Fourth Amendment.

The Court has found no legal authority from within the Tenth Circuit addressing whether a Fourth Amendment violation occurs when a plaintiff's movement is terminated

after a defendant officer's gun is discharged but does not hit the plaintiff. However, many courts have found that the Fourth Amendment is *not* implicated when an officer's firearm is discharged and misses a plaintiff but fails to terminate the plaintiff's movement.

In *Reeves v. Churchich*, 484 F.3d 1244, 1252-53 (10th Cir. 2007), the Tenth Circuit found that no seizure had occurred when officers pointed their weapons and made verbal commands at the plaintiffs, because the plaintiffs did not submit to the show of authority. Similarly, in *Bella v. Chamberlain*, 24 F.3d 1251, 1256 (10th Cir. 1994), an officer fired his weapon at the plaintiff who was fleeing in a helicopter. There, the Tenth Circuit held that the officer's firing of his gun, which hit the helicopter but not the plaintiff, constituted a show of authority. *Bella*, 24 F.3d at 1256. However, the court found no seizure because, the shots "did not cause [the plaintiff] to submit nor did they otherwise succeed in stopping him." *Id.* (footnote omitted).

Here, many of the facts align with those discussed in *Reeves* and *Bella*. However, one critical fact is different—Plaintiff's movement was terminated. *Second Am. Compl.* [#14] at 4. Like the officers in *Reeves*, here, Defendant is alleged to have pointed his weapon and made verbal commands at Plaintiff. *Id.* Unlike the *Reeves* and *Bella* plaintiffs, who did not submit to the show of authority and terminate their movement, Plaintiff here immediately fell to the ground when Defendant's gun discharged. *Id.* Significantly, in *Bella*, the Tenth Circuit found an officer's firing of his gun to be a show of authority. 24 F.3d at 1256. Here, viewing the allegations in the light most favorable to Plaintiff as the non-movant, Defendant made a show of authority by allegedly pointing his weapon at Plaintiff and firing a shot. *Id.* The fact that Plaintiff was not harmed by the discharge is irrelevant. Instead, Plaintiff's movement was immediately terminated after Defendant's

firearm was discharged, which constituted a show of authority, thereby creating a potential Fourth Amendment violation.

### ii.     Reasonableness

The Court next considers the reasonableness of the seizure. In doing so, the Court considers "'whether it would be clear to a reasonable officer [in the defendant's position] that his conduct was unlawful in the situation he confronted.'" *Thomas v. Durastanti*, 607 F.3d 655, 663-64 (10th Cir. 2010) (modification in original) (quoting *Simkins v. Bruce*, 406 F.3d 1239, 1241 (10th Cir. 2005)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. If a reasonable officer had probable cause to believe there was a threat of serious bodily harm to himself or others, the use of deadly force is not unlawful. *Thomas*, 607 F.3d 664 (citing *Graham*, 490 U.S. at 396-97; *Jiron v. City of Lakewood*, 392 F.3d 410, 414-15 (10th Cir. 2004)).

Under Plaintiff's allegations, the Court must consider whether Defendant "could have reasonably perceived he was in danger at the precise moment that he used force and whether his own reckless or deliberate conduct (as opposed to mere negligence) unreasonably created the need to use force." *Thomas*, 607 F.3d at 664 (citing *Sevier v. City of Lawrence*, 60 F.3d 695, 699 & n.7 (10th Cir. 1995)). Here, Plaintiff alleges that, when the use of force occurred, he wore no shirt, had no weapons, and had his hands in the air as he approached Defendant. *Second Am. Compl.* [#14] at 4. Plaintiff had allegedly yelled to Defendant that he carried no weapons. *Id.* Based on the well-pleaded allegations, the Court finds that Defendant could not have reasonably perceived he was in danger at the precise moment of the use of force. Therefore, the Court finds that Plaintiff

has sufficiently alleged that Defendant used excessive force in violation of the Fourth Amendment.

### 2.  Qualified Immunity

Defendant asserts for the first time in his Reply [#30] that he is entitled to qualified immunity, because Plaintiff's response fails to establish a constitutional violation. *Reply* [#30] at 2. However, arguments raised for the first time in a reply brief are waived. *See, e.g.*, *Staheli v. Comm'r, SSA*, 84 F.4th 901, 908 n.4 (10th Cir. 2023) ("This argument is waived because [the plaintiff] raises it for the first time in her reply brief.") (citation omitted); *Cruz v. City and County of Denver*, No. 21-cv-03388-KAS, 2024 WL 1346471, at *17 (D. Colo. Mar. 29, 2024) ("[A]rguments raised for the first time in a reply brief are waived.") (citation omitted). Because Defendant failed to raise his qualified immunity argument in the Motion [#18], it has been waived for purposes of the Motion. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 305 (4th Cir. 2006) (noting, "a district court is entitled to refuse to consider" qualified immunity at the motion-to-dismiss stage if raised for the first time in a reply brief); *cf. Sayed v. Virginia*, 744 F. App'x 542, 546-47 (10th Cir. 2018) (assuming without deciding that the defendants forfeited qualified immunity by only discussing general qualified immunity principles in their opening motion and not addressing the topic in their reply brief).

### IV.  Conclusion

For the reasons stated above,

IT IS HEREBY **ORDERED** that the Motion [#18] is **DENIED**.

Dated: November 18, 2024                              BY THE COURT:

                                                   Kathryn A. Starnella  
                                                   United States Magistrate Judge